## Smalley, Appellant, *v.* Morris.

[Marked to be reported.]

*Promissory note—Evidence—Hearsay.*

In an action on a promissory note given in payment for oil leases, where defendant claims that the sale of the leases was made to him by means of false representations as to productiveness, etc., a statement of an oil company showing the production of the lands is incompetent where the statement is unaccompanied by proof of its correctness.

*Sale—Fraud—Oil lease.*

In an action upon a promissory note given in payment for oil leases, defendant claimed that he was induced to buy the leases by the fraudulent misrepresentations of plaintiff's agent, and that by reason of these misrepresentations he failed to discover the fraud that had been practiced upon him until about a year after the contract was executed.   It also appeared that the note in suit was the fifth of six negotiable promissory notes payable at intervals of six months from the date of the sale.   It appeared that the first four notes had passed into the hands of innocent parties before maturity, and had been paid.   *Held*, that it was not too late for defendant to set up the fraud as a defence to the fifth note.

*Verdict—Affidavits of jurors—Practice, C. P.*

In an action on a note given for oil leases, defendant alleged fraudulent misrepresentations of the plaintiff, as a defence, and that the property was worth less than he had agreed to pay for it.   The jury returned the following verdict: "We do find for the defendant, and agree to give to Mr. Morris (defendant) judgment in the sum of fifteen hundred dollars."   The court entered judgment for defendant, generally.   Affidavits of eleven jurors were filed stating that they intended to find for plaintiff with a credit allowance to defendant of fifteen hundred dollars upon the note in suit.   *Held*, that such affidavits could not be considered, and that the judgment as entered by the court should be sustained.

Argued May 3, 1893. Appeal, No 427, Jan. T., 1893, by plaintiff, S. D. Smalley, from judgment of C. P. Warren Co., Sept. T., 1892, No. 16, on verdict for defendant, B. F. Morris. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and THOMPSON, JJ.

Assumpsit on promissory note. Before NOYES, P. J.

At the trial, it appeared that the note in suit, which was for $1,833.33, was the fifth of a series of six negotiable promissory notes given on Oct. 3, 1889, and payable at intervals of six months. The notes were given in part payment for certain oil leases. Defendant alleged that he was induced to purchase the property by fraudulent misrepresentations as to productiveness, etc., made by plaintiff's agent, W. H. Pickett.

To show the latest and best information as to the production of the properties in question, plaintiff offered in evidence statements made by the National Oil Company, Limited, of the royalty production of the properties. No proof was offered as to the correctness of the statements. Objected to as incompetent, irrelevant and hearsay. Objection sustained and exception. [4]

Plaintiff's fifth and sixth points were as follows:

" 5. If the jury believe that Morris, after learning that Pickett had misrepresented the value of the property to him, kept the property for a year or more and then sold it, thus putting it out of his power to place Smalley in statu quo, such conduct amounts to a ratification of his contract of purchase, even were it tainted with fraud, and he, Morris, cannot now be permitted to defend against the notes he gave in payment of the purchase money." [1]

" 6. It being admitted by Morris that he learned in August, 1890, that Pickett had misrepresented to him the value of the property before purchase, and at least for a year he made no tender back to Smalley of the property, and it being undisputed that in the meantime the property was depreciating in value, such delay was unreasonable, and the defendant cannot now defend against the payment of the note for purchase money in suit. *Answer:* Refused. The principles stated in these points are applicable in case where one party is seeking to enforce an executory contract, or to rescind it in equity upon the ground of fraud. There is no question of rescission involved in this

case. The contract was executed at or about the time it was entered into, and neither party ever offered to rescind, nor are they now in situation to do so. But if the defendant was legally damaged by the false representations made by the plaintiff or his agent, he may show such damages as a defence to the note in suit." [2]

Defendant's seventh point was as follows:

" 7. The jury are not at liberty to set aside or nullify the note in this case on the ground of fraud in its procurement unless the evidence of such fraud is clear, precise and indubitable. *Answer:* Refused. Fraud must be proved and cannot be presumed. But there is no attempt to set aside or nullify the note, and the rules of evidence in such cases are not applicable. You will determine the question of fraud upon the weight of the testimony, as you find it, remembering that it must be proved and the burden of proving it rests on the defendant." [3]

The jury returned a sealed verdict as follows : " Warren, Pa., Jan. 11, 1893. To the Hon. Court : We do find for the defendant, and agree to give to Mr. Morris judgment in the sum of fifteen hundred dollars." Affidavits of eleven jurors filed averred that they intended to find for plaintiff with credit to defendant of $1500. The court entered judgment generally for defendant on the verdict, and discharged a rule for a new trial in the following opinion by NOYES, P. J. :

" The only reason for new trial urged in argument was the fourth, which raises the question whether the affidavits of jurors may be received to impeach, contradict, or set aside their verdict.

" While there are early cases both English and American in which under peculiar circumstances such evidence has been received, it has long been settled in England, and in most of the United States, that reasons of public policy forbid the practice, and the decisions of the Supreme Court of Pennsylvania appear to be uniform to this effect. It was so decided in Cluggage v. Swan, 4 Binney, 150 ; and announced as a settled rule in Hutchinson v. Sandt, 4 Rawle, 234, and White v. White, 5 Rawle, 61. The common pleas cases cited cannot weigh against these authorities, but Conrad v. Broomall, 6 Phila. 237, did not involve the question, and Commonwealth v. Johnson, 5 Pa. C. C. R. 236, which is in point, was a capital case, and the learned

judge who delivered the opinion misunderstood Ritchie v. Holbrooke, 7 S. & R. 458, which he regards as qualifying, or impeaching Cluggage v. Swan, for C. J. TILGHMAN takes pains to distinguish the case, and received the affidavits of jurors to show misconduct by one of the parties to the suit, but not to impeach the verdict, or show the misconduct of the jurors.

" The passage cited from Wharton's Crim. Pl. & Pr., 9 ed., § 847, seems to me well answered by TURLEY, J., in Saunders v. Fuller, 4 Humph. 516, who says : ' If the verdict from misapprehension be found either against the law of the case, or the weight of the testimony, the evil can be easily remedied without affidavit ; and if it be against neither the one nor the other there is no remedy required, and no necessity for investigating the secret operations of the minds of the jurors in arriving at their verdict.

" The great weight of authority everywhere, and I think all the authorities in Pennsylvania, are against the reception of the testimony of jurors, to impeach their verdict, either by showing their own misconduct or by contradicting the record as to their determinations.    An exception is recognized in some courts, where the verdict agreed upon by the jury has been misapprehended and erroneously recorded by the court; or where, by the mistake or misconduct of the foreman, the verdict has been announced contrary to the intention of the jury. But the case in hand cannot be brought within this exception. The affidavits do not allege that any of the jury misunderstood the language of their verdict, but merely that they did not intend to find what the plain and unambiguous terms used import.    The paper which they brought into court admits of but one interpretation, and cannot be tortured into meaning what the affidavits allege was the finding of the jury.

" If any wrong is done in this case we regret it; but it is not contended that the evidence did not justify the verdict as it stands.    To admit the proposition that a jury, after solemnly rendering a verdict in open court, not only orally, but by writing prepared by themselves, may set it aside by their affidavits made afterwards would be a serious blow to the purity and dignity of judicial proceedings."

*Errors assigned* were (1-3) instructions; (4) ruling on evi-

dence, quoting instructions and bill of exception but not evidence offered; (5) in entering judgment on verdict; (6) in refusing to set aside verdict.

*W. M. Lindsey, James O. Parmlee* with him, for appellant.—There is no evidence that Smalley authorized Pickett to make any representations.

Defendant's delay in tendering back the property indicates a ratification of the contract: Pearsoll v. Chapin, 44 Pa. 9; Negley v. Lindsey, 67 Pa. 217; Leaming v. Wise, 73 Pa. 176; Oil Co. v. Marbury, 91 U. S. 592.

Why should less evidence of fraud be needed to successfully defend against a promissory note than to vary and contradict on the same ground the terms of a written agreement? To do the latter requires evidence clear, precise and indubitable: Thorne v. Warfflein, 100 Pa. 526.

The verdict was wrongly entered: Cogan v. Ebden, 1 Burrows, 383; Rex v. Simmons, 1 Wils. 329; Com. v. Johnson, 5 Pa. C. C. R. 236.

We do not seek by affidavits of the jurors to impeach their conduct in rendering the verdict, but do seek to show that the court erred in moulding an obscure verdict into a new one that the jury never agreed to.

That the court below had a right to correct a manifest error in the verdict, even after the jury were discharged, is well settled: Keen v. Hopkins, 48 Pa. 445; Clouser v. Patterson, 122 Pa. 372; Wolfran v. Eyster, 7 Watts, 38; Reitenbaugh v. Ludwick, 31 Pa. 141; Newell v. Wilgus, 35 Pitts. L. J. 306; Cluggage v. Swan, 4 Bin. 150; White v. White, 5 Rawle, 61; Hutchinson v. Sandt, 4 Rawle, 234; Watkins v. B. & L. Asso., 97 Pa. 514.

*W. W. Wilbur, W. Schnur,* and *Frazine & Wiggins* with him, for appellee. — The positive acts, misrepresentation of facts and concealment of material matters by an agent, when part of the res gestæ, are binding upon the principal: Story on Agency, 7th ed., § 137; Addison on Torts, § 1197; Addison on Contracts, 631; Lynch's Ap., 97 Pa. 350; Hughes v. First Nat. Bank, 110 Pa. 428.

Whether the property was real or personal, Morris was not bound to rescind by reason of the fraud practiced upon him.

Defence upon equitable grounds may be taken to an action of purchase money even at common law : Tyson v. Passmore, 2 Pa. 123; Heastings v. McGee, 66 Pa. 384; Lowry v. McLane's Admr., 3 Grant, 333; Krumbhaar v. Birch, 83 Pa. 428; Blygh v. Samson, 137 Pa. 368.

The testimony and all other facts necessary to a proper comprehension of the question must be quoted with the assignment of error : Express Publishing Co. v. Aldine Press, 126 Pa. 347; Royse v. May, 93 Pa. 454; Cornish v. Hooker, 141 Pa. 138.

The verdict was properly entered before this court, and is the only verdict on the record : Walters v. Junkins, 16 S. & R. 414; Ring v. Baker, 4 W. N. 185; Scott v. Scott, 110 Pa. 390; Dornick v. Reichenback, 10 S. &. R. 84; Reese v. Stillé, 38 Pa. 139; Wolfran v. Eyster, 7 Watts, 39; Willard v. Shaffer, 6 Phila. 520; Gaskill v. Crawford, 130 Pa. 28; Schubkagel v. Dierstein, 131 Pa. 46; Cohn v. Scheuer, 115 Pa. 178; Hoar v. Flegal, 1 Penny. 208.

After a verdict is rendered and recorded, and the jury dismissed, the members of the jury cannot alter their verdict by a certificate or affidavit of mistake, or give evidence to impeach it : Cluggage v. Swan, 4 Bin. 150; White v. White, 5 Rawle, 61; Norton & Co. v. Breitenbach, 1 Pearson, 467; Com. v. Miller, 3 Lancaster L. R. 175; Building Assn. v. Mitchell, 2 Kulp, 343; Com. v. Haines, 38 Leg. Int. 94; Ring v. Baker, 4 W. N. 185; Mattox v. U. S., 146 U. S. 140; Clum v. Smith, 5 Hill, 560; Dana v. Tucker, 4 Johns. 487; People ex rel. Hosmer v. Columbia Common Pleas, 1 Wend. 297.

OPINION BY MR. CHIEF JUSTICE STERRETT, October 2, 1893:

This suit is on a note made by defendant to the order of plaintiffs for $1,833.33 at thirty months from the date thereof, October 30, 1889. It was conceded that this note, with others, was given in part payment for an interest in oil-bearing property then conveyed to defendant by plaintiff. The latter, therefore, upon giving the note in evidence, had a clear prima facie case which, in the absence of a valid defence, would have entitled him to a verdict for the full amount of his claim. Defendant contended, and introduced testimony tending to prove

that, in his negotiations for the purchase of the property, willfully false and fraudulent misrepresentations as to its productiveness, the amount of indebtedness or charges against it, the extent of surplus production over and above said indebtedness, etc., and other matters affecting its value, were made by Pickett, plaintiff's agent for the sale thereof, whereby defendant was deceitfully and fraudulently induced to purchase the same at a greatly excessive price, and give, in part payment thereof, the note in suit and others of like tenor.

Without summarizing or specially referring to the testimony, tending to prove these and other facts relevant to the defence that was interposed, it is enough to say that it was quite sufficient to require submission of the case to the jury on the question of the alleged fraud practiced upon plaintiff and the extent to which he was damaged thereby. It is not even alleged that any incompetent or irrelevant testimony was admitted; nor is there any complaint as to the rejection of evidence, except the exclusion of mere statements furnished by the National Oil Company, Limited, referred to in the fourth specification. The court was so clearly right in rejecting these unauthenticated statements that discussion of the proposition is unnecessary. Without proper proof of their correctness they were clearly incompetent; and no such proof was even proposed. Moreover the specification is not according to rule.

As shown by the learned judge's charge and answers to the points presented by counsel on both sides, the case was fairly submitted to the jury, with instructions which were not only warranted by the testimony, but also free from any error affecting the validity of the judgment.

After answering the points and adequately instructing the jury as to the kind of proof necessary to establish the fact of Pickett's agency in the sale of the property, as claimed by defendant, the character and effect of the representations necessary to sustain plaintiff's claim for damages, etc., he concluded his charge thus: "If you find all these things; that the representations were in fact both false and fraudulent; that Pickett was Smalley's agent, or held out in that capacity, then Mr. Morris is entitled to damages. Those damages would be the difference between the value of such property, as it was represented to him, and its actual value as it was, in fact, at the time. But

in this case you could go no further than the amount of the note at all events. If you find the defendant is entitled to set off these damages, and that they amount to as much as the note, or more than the note, you will find generally for the defendant. If you find they are less than the note, deduct the amount and find a verdict for the plaintiff for the difference. If you find the defendant is not entitled to any damages, you will find for the plaintiff for the amount of the note in suit."

The verdict, as it was taken and recorded, is "for the defendant," generally. It is claimed, however, that it was erroneously entered. That question arises under the fifth and sixth specifications of error, and will be disposed of hereafter. The logical inference to be drawn from the verdict, as recorded, is that the facts, as claimed by the defendant, were found by the jury to be true, and that the damages sustained by him by reason of plaintiff's false and fraudulent representations were fully as much as, or more than the amount of the note in suit. As already intimated, this conclusion was fully warranted by the testimony. Indeed, the proof as to the extent of defendant's damages, would have justified the jury in finding an amount much larger than the note in suit, if, under the instructions of the court, they had been permitted to do so. But, as we have seen, they were expressly limited to a sum equal to the amount of plaintiff's claim in this suit.

It follows, therefore, that the judgment should be affirmed unless the court erred in one or more of the matters complained of in the five remaining specifications.

The subjects of complaint in the first two of these specifications are the answers to plaintiff's fifth and sixth points for charge recited therein respectively. After refusing to affirm these points, the learned judge, for further answer to both of them, said: "The principles stated in these points are applicable where one party is seeking to enforce an executory contract, or to rescind it in equity, upon the ground of fraud. There is no question of rescission in this case. The contract was executed at or about the time it was entered into, and neither party ever offered to rescind, nor are they now in a situation to do so. But if defendant was damaged by the false representations made by the plaintiff or his agent, he may show such damages as a defence to the note in suit."

In view of the facts, established by the verdict, this answer is self-vindicating. The fraudulently procured contract was forthwith executed by conveying to defendant the property, consisting mainly of an interest in mining leases, chattels real, and personal property, together with one fourth interest in a surplus of about $8,000 belonging to said leases, etc., and by paying to plaintiff $2,000 cash, same amount in the four Cable notes of $500 each, and securing residue of the consideration by defendant's six negotiable promissory notes of $1,833.33 each, payable at intervals of six months, with interest, etc., amounting in the aggregate to $15,000. According to some of the witnesses the property conveyed was not then worth more than one fourth of the consideration paid and secured as aforesaid. As appears from the testimony, the Cable notes were transferred to Pickett for his part in the transaction. The first in order of maturity of the six notes for $1,833.33 each, was indorsed by plaintiff to the Citizens' National Bank to which it was paid by defendant; and the next three were indorsed to Mr. Bright, to whom defendant paid two of them. The fifth, being the note in suit, matured in the hands of the payee, and thus was presented the first opportunity defendant had of successfully defending against the payment of said notes. Those that became due previously matured in the hands of innocent holders. Moreover, the defendant, misled by the misrepresentations of plaintiff's agent, failed to discover the fraud that had been practiced on him until about a year after the contract was executed. It was then too late to rescind. Plaintiff's action, in the meantime, was such as to preclude the possibility of placing either party in statu quo. Defendant had no other available mode of redress than by an action of deceit, or by defence, in the nature thereof, to such of the notes as had not passed into the hands of innocent parties before maturity. That he had a right to make such defence as he did, we think is clear on principle as well as authority. The following are some of the cases in which the principle for which he contends is recognized: Tyson v. Passmore, 2 Pa. 122; Heastings v. McGee, 66 Pa. 384; Bower v. Fenn, 90 Pa. 359; Blygh v. Samson, 137 Pa. 368; Fisher v. Worrall, 5 W. & S. 478; Brown v. Beecher, 120 Pa. 590; Pennock v. Tilford, 17 Pa. 456; Stubbs v. King, 14 S. & R. 206.

There is no error in the learned judge's answer to plaintiff's seventh point, recited in the third specification. The fourth specification has already been noticed and dismissed.

For reason given in the learned judge's opinion discharging the rule for new trial we think there is no merit in the fifth and sixth specifications. To sanction the introduction of affidavits made by some of the jurors after their verdict has been received and recorded by the court would be fraught with the most dangerous consequences. As the court correctly said, the sealed verdict which was brought into court by the jury "admits of but one interpretation, and cannot be tortured into meaning what the affidavits allege was the finding of the jury."

The case was carefully and ably tried, and there appears to be nothing in the record to justify a reversal of the judgment.

Judgment affirmed.