# Jack *v.* Hixon, Appellant.

*Evidence—False representations—Oil lease.*

In an action on a note given as part payment for an oil lease evidence as to misrepresentations alleged to have been made by plaintiff to defendant as to the flow of the oil well, is insufficient to submit to the jury where the testimony is mostly hearsay, and the defendant fails to produce the pipe line books which would show the average flow at the time of the sale, and before and after.

*Vendor and vendee—Representations as to value.*

If a vendor permits the vendee to contract with him on the faith of his statements of value, he is bound not merely to believe, but to know that they were true.

Argued May 20, 1903. Appeal, No. 51, April T., 1903, by defendant, from judgment of C. P. Venango Co., Nov. T. 1901, No. 87, on verdict for plaintiff in case of C. H. Jack *v.* L. C. Hixon. Before RICE, P. J., BEAVER, ORLADY, W. D. PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Assumpsit on a promissory note. Before CRISWELL, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $1,124.18. Defendant appealed.

*Errors assigned* were various rulings on evidence, and (15) affirmance of point quoted in the opinion of the Superior Court.

*Robert F. Glenn,* with him *Isaac Ash,* for appellant.

*John O. McCalmont,* with him *B. H. Osborne,* for appellee.

OPINION BY MORRISON J, October 5, 1903:

On March 7, 1901 C. H. Jack, the plaintiff, and others assigned to L. C. Hixon, defendant, certain leaseholds situate in Venango county, for the consideration of $13,000. The defendant alleged that the plaintiff represented the production of oil from said leaseholds was within five barrels of 250 barrels per month.

Twelve thousand dollars of the consideration was paid in cash, and a note for the balance, $1,000, was given by the defendant to Jack, the plaintiff.

On January 13, 1902, judgment was confessed and entered on the note in the court of common pleas of Venango county. On January 20, 1902, a petition was presented to the court alleging want of consideration for the note in that the production from the leaseholds was much less than represented by the plaintiff, Jack, and praying the court to open the judgment entered on the note. The judgment was afterwards opened and defendant let into a defense. On the trial the court submitted the evidence to the jury and the result was a verdict in favor of the plaintiff for the full amount of the original judgment and interest. From the judgment entered on this verdict defendant appealed and assigns in this court sixteen assignments of error.

At the trial there was no question raised as to the title of the leaseholds assigned to the defendant, and it was conceded that the note upon which the judgment was entered was executed and delivered by the defendant to the plaintiff. The sole defense was that the representation made by the plaintiff, Jack, that the wells were doing within five barrels of 250 barrels per month was untrue, and that the wells were doing not more than 200 barrels per month at the time of the sale. At the trial the plaintiff having put his note in evidence made a prima facie case and rested. The burden was then on the defendant to sustain his allegation that the production of the wells was less than as represented by the plaintiff, Jack. It appears from the testimony that all of the oil produced from the leaseholds in question was run into the pipe lines both before and after the transfer of the leaseholds to Hixon. There was considerable evidence tending to show that if Jack represented that the wells were doing within five barrels of 250 barrels per month at the time of the sale, such representation was true. It is well known in the oil regions, and the evidence shows, that the production of these wells could have been ascertained by bringing the pipe line books into court and putting them in evidence. The testimony tends to show that in accordance with the custom of oil men that it would be necessary in order to establish the actual production to show the

production for a period of five or six months, and to do this it would be necessary to start from a time when the tanks were empty, or to ascertain the amount of oil in the tanks at a given time and then subtract this from the total runs from that period until, say the time of sale. This method would furnish an accurate rule for ascertaining the average production of the wells for the time taken. If the defendant desired to show the actual production of the wells at the time he took possession of them and for any given time thereafter, the same method could have been resorted to. The court below admitted considerable evidence offered by the defendant for the purpose of showing that the production was less than 245 barrels per month, but a careful examination of the testimony shows that considerable of it was mere hearsay, and that taken together it was not such evidence as ought to have been submitted to the jury. A careful reading of it convinces us that if the jury had found that the production was less than 245 barrels per month or thereabouts their finding would have been a mere guess. We are clearly of the opinion that the defendant did not offer sufficient competent evidence to warrant the submission of the question in dispute to the jury, and therefore the plaintiff's first point " that under all the evidence the verdict must be for the plaintiff " ought to have been affirmed. This view of the case renders it unnecessary to pass upon the sixteen assignments of error, because in submitting the case to the jury the court gave the defendant's so-called defense a consideration that it was not entitled to.

It should be observed that the evidence does not warrant finding that there was any verbal guarantee or agreement that the leases would produce a certain amount of oil after defendant should take charge of them. And we have already said that we think the evidence shows that the wells were producing as much oil at and before the sale as the defendant alleges the plaintiff represented. While it is unnecessary to notice the assignments of error we are disposed to refer briefly to the plaintiff's fourth point, and the answer of the court thereto because it is so radically wrong, that if the defendant had succeeded in offering sufficient evidence to carry his case to the jury the judgment in favor of the plaintiff would have been erroneous on account of the answer to this point. This question

is raised by the fifteenth assignment of error as follows : " That to resist payment of the note in question on the ground of representations by the plaintiff, the defendant must prove that the representations were as to present existing facts; that they were material; that they were untrue ; that they were known or should have been known to the plaintiff to be untrue ; that the defendant did not know the facts and was not put on inquiry as to them, but relied upon plaintiff's representations in signing the note, and that he was injured thereby." This point was unqualifiedly affirmed. We cannot pass this without calling attention to the fact that it is not the law. In Tyson v. Passmore, 2 Pa. 122, Chief Justice GIBSON said (page 124) : " But he who would avail himself of his own misrepresentation, even where it was unintentional, is as much open to an imputation of fraud as if its falsity had been known to him." This case is referred to and the principle affirmed in Blygh v. Samson, 137 Pa. 368. To the same effect is Smalley, Appellant, v. Morris, 157 Pa. 349. Bower v. Fenn and Wife, 90 Pa. 359, holds the same doctrine, i. e., that it is of no consequence that the vendor believed his statements were true if they were false in fact; that if the vendor permitted the vendee to contract with him on the faith of his statements of value, he was bound not merely to believe, but to know they were true. See also Braunschweiger and Manning v. Waits, 179 Pa. 47. Fisher v. Worrall, 5 W. & S. 478, decided in 1843, holds the same doctrine, and our own case of Lake v. Weber, 6 Pa. Superior Ct. 42, is an authority to the same effect.

We think these authorities and many others that might be cited convict the court below of radical error in affirming the plaintiff's fourth point. But the error was harmless for the reason that the defendant did not show such a state of facts as required or justified the court in submitting his defense to the jury, and therefore the verdict in favor of the plaintiff and the judgment thereon should be sustained. For this reason the assignments of error are all overruled and the judgment is affirmed.